UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 22-cv-23511-BLOOM/Otazo-Reyes**

RICARDO ALBERTO MARTINELLI
BERROCAL,

    Plaintiff,
v.

MERRICK B GARLAND,
*United States Attorney General*
*United States Department of Justice*
ANTONY JOHN BLINKEN,
*United States Secretary of State*
*United States Department of State*
THOMAS B HEINEMANN,
*Office of the Legal Adviser for Law Enforcement and Intelligence,*
*United States Department of State*

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Plaintiff's Complaint, ECF No. [27]. Plaintiff, Ricardo Alberto Martinelli Berrocal ("Martinelli Berrocal"), filed a Response in Opposition to the Motion, ECF No. [33], to which Defendants Merrick B Garland, Antony John Blinken, and Thomas B Heinemann (collectively "Defendants" or the "Government") filed a Reply, ECF No. [34]. The Court has carefully considered the Motion, the record in this case, and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

    **I.**    **INTRODUCTION**

On October 9, 2015, the Republic of Panama indicted Martinelli Berrocal, the former President of the Republic of Panama from 2009 to 2014, charging him with crimes committed

during his presidency. ECF No. [1] ¶ 25. Because Martinelli Berrocal was residing in Miami, Florida, Panama filed an extradition request with the United States on September 26, 2016, listing four charges against Martinelli Berrocal. ECF No. [1] ¶ 27; ECF No. [1-8] at 2. Following an order by Chief Magistrate Judge Edwin G. Torres, and pursuant to the Treaty Between the United States and Panama for the Mutual Extradition of Criminals, U.S.-Pan., May 12, 1905, 34 Stat. 2851, (the "Treaty"), the United States Marshals Service arrested Martinelli Berrocal on June 12, 2017, and he was extradited from the United States to the Republic of Panama on June 11, 2018. ECF No. [1] ¶¶ 31-32, 39.

On August 26, 2019, the Oral Trial Court of the First Judicial Circuit of the Republic of Panama acquitted Martinelli Berrocal of the four charges for which he was extradited, also ordering the removal of "personal safety measures" which restricted Martinelli Berrocal's freedom of travel outside of Panama. *Id*. ¶ 46; ECF No. [1-14] at 3. Panama filed a timely appeal of the acquittal on August 21, 2019. ECF No. [1] ¶ 46. On November 20, 2020, the Superior Tribunal of Appeals set aside the lower court's judgment of acquittal and ordered a new trial. *Id*. ¶ 64. Finally, On July 2, 2022, and August 4, 2022, Panama charged Martinelli Berrocal with two separate counts of money laundering, ordered that his movement be restricted to the territory of Panama, and ordered him to appear before the prosecuting courts on the fifteenth day of every month. *Id*. ¶¶ 52-54, 58-59; ECF No. [1-30] at 4; ECF No. [1-31] at 4.

Martinelli Berrocal alleges that Panama chose to further prosecute him on other crimes for which he was not extradited due to a letter written by Thomas Heinemann ("Heinemann"), Assistant Legal Adviser for the Department of State's Law Enforcement and Intelligence Unit, stating that the Rule of Specialty in the Treaty no longer applied to Martinelli Berrocal. ECF No. [1] ¶ 50. The Rule of Specialty restricts foreign states to prosecuting extradited individuals only

2

for the crimes for which the requested country agreed to surrender the individual, until after the individual has had an opportunity to return to the surrendering state. *See* Treaty, *supra*, art. 8. Martinelli Berrocal requests a declaratory judgment declaring that (1) Heinemann did not have the authority to speak for the United States or determine that the Rule of Specialty no longer applied to Martinelli Berrocal; (2) certain conditions must be satisfied for the Rule of Specialty to no longer apply, and Heinemann's letters could not waive the Rule of Specialty; (3) Heinemann misinterpreted the Rule of Specialty; (4) the Department of State's adoption of Heinemann's opinion as the official position of the United States was unlawful; and (5) the Rule of Specialty continues to apply to Martinelli Berrocal. ECF No. [1] ¶¶ 121-127.

The Government now moves to dismiss the Complaint for lack of Article III standing, lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* ECF No. [27] at 9. Martinelli Berrocal responds that the requested relief is not warranted because his injury is fairly traceable to the Department of State and to Heinemann, and because Panama will redress his injury if the Court provides the requested declaratory judgment.

## II.     LEGAL STANDARD

### A. Article III Standing

One element of the case-or-controversy requirement under Article III of the United States Constitution is that plaintiffs "must establish that they have standing to sue." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "The law of Article III standing serves to prevent the judicial process from being used to usurp the powers of the political branches, and confines the federal courts to a properly judicial role." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013)) (alteration adopted; citations omitted). "Standing

for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redress[a]bility." *Dermer v. Miami-Dade Cty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Specifically, "[t]o have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly v. Harris*, 331 F.3d 817, 819-20 (11th Cir. 2003); *see Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005) (same). "The party invoking federal jurisdiction bears the burden of proving standing.'" *Fla. Pub. Interest Research Grp. Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004) (quoting *Bischoff v. Osceola Cty.*, 222 F.3d 874, 878 (11th Cir. 2000)).

    **B. Lack of Subject Matter Jurisdiction**

A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); *see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008) ("By contrast, a factual attack on a complaint challenges

the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.").

"In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). As such, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).

### C. Failure to State a Claim

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate

all possible inferences derived from those facts in favor of the plaintiff. *See American Marine Tech, Inc. v. World Group Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019).

### III.    DISCUSSION

The Government argues that dismissal is proper because Martinelli Berrocal's injury is not fairly traceable to the Government, and his requested relief will not redress his injury. As such, he lacks standing. ECF No. [27-1] at 7-10. Martinelli Berrocal responds that he has properly alleged all the elements required to establish Article III standing. ECF No. [33] at 2-7. The Court considers whether Martinelli Berrocal satisfies the requirements for standing.

#### A.  Standing Under Article III

The Government argues that Martinelli Berrocal lacks Article III standing because the second and third elements of standing are not met. ECF No. [27-1] at 9. Specifically, the Government asserts that Martinelli Berrocal has failed to show that his injury—being prosecuted for other offenses for which he was not extradited—is fairly traceable to the conduct of the Defendants in this action, and that Martinelli Berrocal's requested relief—declaratory judgments—will not serve to redress his injury. ECF No. [27-1] at 11. Martinelli Berrocal responds that his injury is fairly traceable to the Department of State and Heinemann because Panamanian officials relied on Heinemann's letters to proceed with further prosecutions against Martinelli Berrocal. ECF No. [33] at 11. Furthermore, Martinelli Berrocal argues that the requested declaratory judgments from this Court will result in the dismissal of the proceedings against him in Panama. ECF No. [33] at 13.

##### i.  Fairly Traceable.

"[P]roximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Havana Docks Corp. v.*

*MSC Cruises SA Co.*, 484 F. Supp. 3d 1177, 1193–94 (S.D. Fla. 2020) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014)). However, the standing causation requirement will not be satisfied if a plaintiff's injury is "the result of the independent action of some third party not before the court." *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020) (quoting *Lujan*, 504 U.S. at 560). In *Jacobson*, the Eleventh Circuit held that injuries sustained as a result of candidates affiliated with the Republican Party being listed first on a voting ballot were not fairly traceable to the Florida Secretary of State because the election supervisors who organize and print the ballots are "independent officials . . . who are not subject to the Secretary's control." *Id.*

Martinelli Berrocal claims that "[b]ut for [] Heinemann's actions, [Martinelli Berrocal] would not be facing charges for crimes that allegedly occurred before his extradition in violation of the protections bestowed on him by the Treaty and causing his injuries." ECF No. [33] at 11. However, Martinelli Berrocal notes that Heinemann's December 19, 2019 letter, which stated that the Rule of Specialty no longer applied, was a response to a question by Panama's then-Attorney General Kenia Porcell de Alvarado, who Martinelli Berrocal claims "did not have the authority under Panamanian law to ask the question to [] Heinemann." *Id.* at 9. Furthermore, it was Panamanian officials' choice to further prosecute Martinelli Berrocal despite ongoing questions over the applicability of the Rule of Specialty. *See* ECF No. [1] ¶¶ 51-56. On February 18, 2020, after receiving Heinemann's letter stating that the Rule of Specialty no longer applied, Panamanian prosecutors nevertheless asked the Ministry of Foreign Affairs of Panama to forward a request to the United States to waive the Rule of Specialty for Martinelli Berrocal. *Id.* ¶ 51. Before receiving a response, Panamanian prosecutors charged Martinelli Berrocal with money laundering on July 2, 2020. *Id.* ¶ 52.

Even if Panamanian prosecutors relied on Heinemann's letter, as Martinelli Berrocal has alleged, the Panamanian prosecutors are ultimately independent officials of another sovereign state who are not subject to the control of any Defendant in this action. *See Jacobson*, 974 F.3d at 1253-54; *Lewis v. Governor of Ala.*, 944 F.3d 1296 (11th Cir. 2019) (en banc) (Holding that a plaintiff's injury must be fairly traceable to the actions of the defendant, and not the actions of a third party not before the court); *see also Abulhawa v. Dep't of Treasury*, 239 F. Supp. 3d 24, 35 (D.D.C. 2017) (dismissing for lack of standing because the actions of third party organizations operating in Israel, which were granted tax exempt status by the Department of the Treasury, were not before the court and were not under the control of the Department of the Treasury). Martinelli Berrocal has the burden to establish the elements of standing, but he cites no authority to counter the above propositions. *See* ECF No. [33] at 9-11; *Fla. Pub. Interest Research Grp.*, 386 F.3d at 1083 ("[T]he party invoking federal jurisdiction bears the burden of proving standing."). Accordingly, the Court finds that Martinelli Berrocal has failed to meet his burden of proving causation, and that his injuries are not fairly traceable to the conduct of the Defendants in this action.

    ii. **Redressability.**

To establish redressability under Article III's standing requirements, two requirements must be met. First, a plaintiff must allege that "it is likely, not just merely speculative, that the injury will be redressed by a favorable decision." *Kelly*, 331 F.3d at 820 (11th Cir. 2003). Second, "'it must be *the effect of the court's judgment on the defendant*'—not an absent third party—'that redresses the plaintiff's injury, whether directly or indirectly.'" *Lewis*, 944 F.3d at 1301.

The Government argues that "[t]he entry of a declaratory judgment against the Government would not significantly increase the likelihood that [Martinelli Berrocal] would avoid prosecution for money laundering," ECF No. [27-1] at 11, and that the declaratory judgment will not affect

Panama, as it is a third party the Court cannot control or predict. *Id.* at 12. Martinelli Berrocal responds that should the Court grant his requested declaratory judgments, he "would be empowered to assert a claim for violation of the Rule of Specialty against Panama." ECF No. [33] at 12. Martinelli Berrocal further asserts that the doctrine of *pacta sunt servanda* compels Panama to comply with the Rule of Specialty in good faith, and that a declaratory judgment from the Court will compel Panama to dismiss the proceedings against him pursuant to Article 548 of the Panamanian Procedural Penal Code. *Id.* at 13.

Martinelli Berrocal does not explain how or why it is likely that a declaratory judgment from this Court will redress his injury. The provision of the Panamanian Procedural Penal Code he cites (which incorporates the Rule of Specialty) only states that "any process initiated against the extradited person . . . in violation of this rule *may* be declared void." *See* ECF No. [33] at 12-13; ECF No. [34] at 7. Martinelli Berrocal's argument on redressability is purely speculative. Being "empowered" to bring a claim does not equate to a likelihood that the claim will be successful, or that the prosecutions against him will be dismissed. Martinelli Berrocal does not contest the Government's argument that Article 548 of the Panamanian Procedural Penal Code's use of the word "may" indicates that it is entirely discretionary whether to declare any process void. *See id.* at 7. Accordingly, the Court finds that the likelihood of redress is low. Furthermore, the doctrine of *pacta sunt servanda* only requires a state to fulfill its treaty obligations in good faith in the interest of reciprocity, but it does nothing to ensure that Panama will "adhere to a declaratory judgment by the Court that directly or indirectly impacts the parties' relationship as it relates to the Treaty." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 433 (2d Cir. 2001); ECF No. [34] at 6-7. Finally, Martinelli Berrocal has not alleged that the effect of a declaratory judgment from this Court is likely to stop the prosecutions in Panama either directly or indirectly.

Therefore, because Martinelli Berrocal's injury is not fairly traceable to the Defendants in this action, and he has not demonstrated that the relief he seeks is likely to redress his injury, the Court finds that Martinelli Berrocal lacks Article III standing. The Court nevertheless continues to consider whether Martinelli Berrocal has standing under the Rule of Specialty.

### B. Standing Under the Doctrine of Specialty

The Rule of Specialty provides that a "nation that receives a criminal defendant pursuant to an extradition treaty may try the defendant only for those offenses for which the other nation granted extradition." *United States v. Puentes*, 50 F.3d 1567, 1572 (11th Cir. 1995). Notwithstanding the Article III standing requirements of injury-in-fact, traceability, and redressability, the Eleventh Circuit in *Puentes* held that "an individual extradited pursuant to an extradition treaty has standing under the doctrine of specialty to raise any objections which *the requested nation might have asserted*." *Id.* at 1575 (emphasis added); *see also United States v. Alvarez-Machain*, 505 U.S. 655, 667 (1992) (rejecting a requirement that a foreign government must formally object to a treaty violation in order for an individual to have standing to bring a claim for that violation). However, this right exists only "at the sufferance of the requested nation." *Puentes*, 50 F.3d at 1575. "As a sovereign, the requested nation may waive its right to object to a treaty violation and thereby deny . . . standing to object to such an action." *Id.*; *United States v. Duarte*, 15-20540-CR, 2018 WL 310025, at *2 (S.D. Fla. Jan. 4, 2018), *aff'd sub nom. United States v. Mejia-Duarte*, 780 F. App'x 730 (11th Cir. 2019).

Here, Heinemann's October 29, 2020 letter states that "Panama is free to further prosecute [Martinelli Berrocal] without obtaining a waiver of the Rule of Specialty from the United States." ECF No [1-15] at 4. While Martinelli Berrocal contests Heinemann's authority to make that determination, the Court need not address that question because the U.S. Embassy in Panama

10

adopted the statement and offered it to Panamanian authorities as the official position of the United States. *See id.* at 7. Thus, the Court agrees with the Government that "even if [] Heinemann was not authorized to speak on behalf of the U.S. Government . . . [Martinelli Berrocal] has pointed to nothing suggesting that the U.S. Embassy was not authorized to provide the official U.S. position to Panamanian officials." ECF No. [34] at 10. The U.S. Embassy's letter reveals that the United States, the requested nation in this case, waived its right to object to a Treaty violation, thereby denying Martinelli Berrocal standing to object. *See United States v. Diwan*, 864 F.2d 715 (11th Cir. 1989) (finding defendant lacked standing to bring a claim for violation of the Rule of Specialty when the United Kingdom did not regard a further prosecution of the defendant to be a violation of its extradition treaty with the United States).

Therefore, because the United States will not object to Martinelli Berrocal's further prosecutions, he lacks standing under the Rule of Specialty, and the Complaint must be dismissed. The Court need not address the remaining challenges asserted by the Government.

### IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion, **ECF No. [27]**, is **GRANTED**.

2. The above-styled case is **DISMISSED WITHOUT PREJUDICE**.

3. To the extent not otherwise disposed of, all pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

4. The Clerk of Court is directed to **CLOSE** this case.

Case No. 22-cv-23511-BLOOM/Otazo-Reyes

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 27, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of Record